IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RONY DESIR, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil No. TDC-17-3465 |
| | * |
| THE UNITED STATES OF AMERICA | * |
| | * |
| Defendant. | * |

\* \* \* \* \*

**UNITED STATES' TRIAL BRIEF ON DAMAGES**

The United States, by and through, undersigned counsel, respectfully submits this Trial Brief on the issue of damages. While the parties have filed a Joint Trial Brief (ECF No. 101-3), issues related to damages were not agreed upon. The United States is not aware of what issues plaintiff may dispute. As such, the below analysis is intended to provide an overview of the relevant case law. Should the plaintiff disagree with any portion of the United States' legal analysis, the United States would request an opportunity to respond.

   **I.    SUMMARY OF APPLICABLE LAW CONCERNING DAMAGES**

As set forth in the parties Joint Trial Brief, should the Court find that plaintiff suffered economic loss more than $50,000 or "serious injury" as a result of the MVA, the court must assess damages. To determine what judgment is entered, the court is governed by the provisions of N.Y. C.P.L.R. § 5041, subject to any limitations imposed by the FTCA.

   **A.  Causation**

A plaintiff is only entitled to damages for injuries that are the proximate cause of the negligence, and not for any conditions that exist independent of that negligence. *Robinson v. United States*, 330 F. Supp. 2d 261, 290 (W.D.N.Y. 2004) (citation omitted); *Hain v. Jamison*, 28

1

N.Y.3d 524, 528 (N.Y. 2006). Where a plaintiff has a preexisting condition, the plaintiff may not recover for those damages that the preexisting condition would have caused in the absence of the negligence. *Oakes v. Patel*, 20 N.Y.3d 633, 647 (N.Y. 2013). Causation must be established by objective medical evidence. *Mastrantuono v. United States*, 163 F. Supp. 2d 244, 257 (S.D.N.Y. 2001).

### B. Economic Expenses

New York law limits economic damages to those that are reasonable and necessary, and that exceed $50,000. N.Y. Insurance Law §§ 5102, 5104; *see also Mastrantuono*, 163 F. Supp. 2d at 254 (citations omitted); *Contri v. Yellow Freight Sys.,* 1996 U.S. Dist. LEXIS 2238, at *7 (S.D.N.Y. 1996). Where medical treatment is not improving or otherwise benefiting the patient, it may no longer be medically necessary. *Ray Gaul and Commercial Union Ins. Co.*, 268 A.D.2d 816 (3rd Dept. 2000) (interpreting what is medically "necessary" within the meaning of N.Y Insurance Law § 5102(a)(1)). A plaintiff may only recover damages for medical bills that were actually paid, not the full amount billed. *Velasquez v. United States Postal Serv.*, 155 F. Supp. 3d 218, 228-29 (E.D.N.Y. 2016); *Lloyd v. Russo*, 273 A.D.2d 359, 360 (App. Div. 2nd Dept. 2000) (awarding medical expense incurred); *Schultz v. Harrison Radiator Div. GMC*, 90 N.Y.2d 311, 315 (N.Y.1997) (plaintiff may only recover future expenses that are likely to be incurred).

### C. Offset for Collateral Sources

Under New York law, and with limited exceptions, Plaintiff's claims for economic losses, including claims for past and future medical expense and lost income, must be reduced or offset by any payments or benefits that have been – or will be with reasonable certainty – replaced or indemnified from a collateral source, such as insurance. N.Y. C.P.L.R. § 4545; *Delano v. United States*, 859 F. Supp. 2d 487, 507 (W.D.N.Y. 2012) (citations omitted); *Dockery v. United States*,

663 F. Supp. 2d 111, 122 (N.D.N.Y. 2009) ("The amount of lost wages is the difference between Dockery's regular salary less the amount he received in disability payments.") Because this is a bench trial, the Court has the discretion to accept collateral source evidence during trial. *See e.g. Velasquez,* 155 F. Supp. 3d at 228-29 (collateral source evidence considered during trial in an FTCA case); *Delano,* 859 F. Supp. 2d at 509 (same).

The following payments or benefits already made by, or that reasonably will be made by, are collateral sources subject to off-set in this case:

- Kaiser Permanente[1] asserts a subrogation claim for past medical expenses in the amount of $183,623.64;

- Plaintiff has received a total of $100,803 in short and long term disability benefits from September 5, 2014 to March 18, 2019;

- Plaintiff has received $197.68 per month in long-term disability benefits since April 2019;

- Plaintiff received $42,528 in social security disability benefits for October 2015 through September 2018; and

- Plaintiff began to receive $1,236 per month in social security disability in October 2018, and has continued to receive monthly payments with cost of living increases.

*See* Joint Pretrial Order ("JPTO"), Section D (ECF No. 101).

---

[1] The majority of Plaintiff's past medical expenses through 2018 have been paid by Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc., as Plaintiff was a beneficiary on his wife's Federal Employee Health Benefit Plan. While a federal statute, 5 U.S.C. § 8902(m)(1), directs OPM by regulation to include subrogation provisions in FEHB contracts – and preempts state anti-subrogation law, Kaiser's subrogation right arises by contract, not through a "statutory lien." Notably, Kaiser has not exercised any subrogation right by advancing claims as a party in this action.

### D. Applicable Medicare Provisions

Plaintiff is a Part A and Part B Medicare Recipient. *See* JPTO Section (D)(11). Medicare holds a statutory lien for any paid medical bills that are found to be casually related to the MVA. *See* 42 U.S.C. § 1395y(b)(2). As such, the Court should not offset any award for medical bills paid by Medicare pursuant to N.Y. C.P.L.R. § 4545. For any future medical care that plaintiff may need, it is unlikely that plaintiff will personally incur any economic expense for the reasons set forth below.  N.Y. C.P.L.R. § 4545

Medicare is the Congressionally-established and publicly-funded health insurance system designed to ensure that the aged and disabled receive appropriate medical care. *See generally* 42 U.S.C. §§ 1395, *et seq*. Medicare is administered by the Centers for Medicare and Medicaid Services, a component of the United States Department of Health and Human Services. As relevant here, there are two main parts of the program: Part A covers inpatient hospital care and related services, 42 U.S.C. §§ 1395c to 1395i-5; 42 C.F.R. Part 409; and Part B provides supplementary medical benefits for services such as physician services, diagnostic testing and certain medical supplies, including durable medical equipment. 42 U.S.C. §§ 1395j to 1395w-4; 42 C.F.R. Part 410.

By law, health care providers who accept Medicare must accept those payments as payment-in-full for their services, and cannot require that patients pay anything beyond that amount. 42 U.S.C. § 1395u(b)(3)(B)(ii) (physicians who choose to bill Medicare directly accept the allowed charge as full payment); *Rehabilitation Ass'n of Virginia, Inc., v. Kozlowski,* 42 F.3d 1444, 1446-47 (4th Cir. 1994) (physicians who participate in Medicare "cannot charge an amount greater than the reasonable charge" set by the Secretary of HHS), *cert. denied,* 516 U.S. 811 (1995). Moreover, even if a third-party is subsequently found liable for the patient's medical

expenses, the service provider "may not seek to collect from the individual (or any financially responsible relative or representative of that individual) payment of an amount for that service." 42 U.S.C. § 1396a(a)(25)(C).

Medicare "participating provider[s]" have agreed to accept the Medicare-approved amount as payment in full for all Medicare patients in a given year. *See* 42 U.S.C. § 1395u(h). Alternatively, physicians may be "non-participating physicians" and may accept assignment on a case-by-case basis. As to those services for which the physician does not accept assignment, the physician's ability to balance-bill the patient for the difference between the charged amount and what Medicare pays is subject to a limiting charge, which is currently 115% above the fee schedule amount for non-participating physicians. 42 U.S.C. § 1395w-4(g)(1)(A)(i), (2)(C).

### E. Federal Income Taxes

In FTCA cases, a claim for lost wages must be reduced by the amount of federal income taxes that the plaintiff otherwise would have paid, regardless of any state law to the contrary. *Battista v. United States*, 889 F. Supp. 716, 725 n.8 (S.D.N.Y. 1995); *see also Tivoli v. United States*, 1997 WL 1047860, at *14 (S.D.N.Y. Oct. 31, 1997), *aff'd,* 164 F.3d 619 (2d Cir. 1998); *Flannery v. United States*, 718 F.2d 108, 111 (4th Cir. 1983).

### F. Future Damages May be Placed in a Reversionary Trust

New York law also contains what is known as a "periodic payment" statute. N.Y. CPLR § 5041(e). Under the statute, if the amount of future economic damages awarded are greater than $250,000, the plaintiff receives two lump sum payments, one for all past damages and one for the first $250,000 of future gross damages. Any lump sum payment for future damages should be reduced to its present value. *Dockery,* 663 F. Supp. 2d 111, 125 (N.D.N.Y. 2009). The remainder

of the award for future damages is paid in periodic installments, i.e., the defendant is required to purchase an annuity contract. *Id.* § 5041(b), (e).

Under the FTCA, however, the United States has only waived its sovereign immunity for a lump sum damages award, not to make periodic payments or purchase annuities. 28 U.S.C. § 1346(b); *see Hull ex. rel. Hull v. United States*, 971 F.2d 1499, 1505 (10th Cir. 1992). Federal courts in New York have exercised their discretion to structure damages awards in this context. *See Estevez v. United States*, 74 F. Supp. 2d 305 (S.D.N.Y 1999); *see also Malmberg v. United States*, 2018 U.S. Dist. LEXIS 62730, at *33-34 (N.D.N.Y. Apr. 2018). Here, should plaintiff be awarded more than $250,000 in future damages, a reversionary trust would be appropriate.

In *Cibula v. United States*, the Fourth Circuit considered the application of a different state's periodic payment statute to the United States in a medical malpractice case. 664 F.3d 428 (4th Cir. 2012). The court held that while the United States is not permitted to "shoulder continuing obligations" such as periodic payments, the placement of future care costs in a reversionary trust appropriately holds the government liable "in the same manner and to the same extent as a private individual" when state law provides for periodic payments of future damages. *Id.* at 430, 433 (holding that the FTCA "permits courts to craft remedies that 'approximate' state periodic payment statutes, including reversionary trusts") (citing *Hull*, 971 F.2d at 1505 (10th Cir. 1992)). *See also Hill v. United States*, 81 F.3d 118, 121 (10th Cir. 1996) (holding district court could create a reversionary trust that "would approximate the result contemplated by" state periodic payment statute).

### G. Pain and Suffering

Under New York law, plaintiff may only be awarded damages for pain and suffering if he demonstrates "serious injury." N.Y. Insurance Law § 5104(a). "When determining the appropriate

damages for pain and suffering, [the Court] is bound by a standard of reasonableness." *Mastratuono v. United States*, 163 F. Supp.. 2d 244, 258 (S.D.N.Y. 2001).

                                                  Respectfully submitted,

                                                  ROBERT K. HUR
                                                  United States Attorney

                                                  /s/
                                                  Jane E. Andersen
                                                  Neil R. White
                                                  Assistant United States Attorneys
                                                  6500 Cherrywood Ln., Suite 200
                                                  Greenbelt, MD  20770
                                                  (301) 344-4433
                                                  *Counsel for Defendant*