# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| RONY DESIR, | : |
| | : |
| Plaintiff, | : |
| | : Civil No. TDC-17-3465 |
| v. | : |
| | : |
| THE UNITED STATES OF AMERICA, | : |
| | : |
| Defendant. | : |

## PLAINTIFF'S BRIEF IN RESPONSE TO UNITED STATES' TRIAL BRIEF ON DAMAGES

The defendant United States raised a variety of new arguments regarding damages in its draft Joint Trial Brief, sent to the plaintiff on October 16, 2020. The plaintiff Rony Desir opposes many of these arguments and therefore did not agree to a joint filing of the contested portions of that draft. The government then filed its separate trial brief on damages, to which the plaintiff now responds.

Many of the damages issues raised by the government in its brief deal with questions of post-verdict reductions in damages and the structure of the payment for future damages, including the government's request for a trust that would result in the government clawing back any portion of the judgment if Mr. Desir dies prematurely. Accordingly, many of these issues are premature at this time and would gain more clarity once the Court has issued a verdict.

### I.    Summary of Applicable Law Concerning Damages

Mr. Desir agrees that New York law governs substantive issues of causation and damages in this case, but disagrees with certain issues raised in its brief.

A.  **Causation**

Under New York's No-Fault Insurance Law, (N.Y. Ins. Law § 5104), "for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury, or for basic economic loss."

In determining whether there has been economic loss exceeding "basic economic loss," the finder of fact must determine whether certain medical and other expenses, (See N.Y. Pattern Jury Instruction 2:285A), and lost earnings covered by the no-fault law exceed $50,000.00. *See* N.Y. Ins. Law §5102(a), 5104(a); *McDonnell v Best Bus Co., Inc.*, 97 AD2d 433, 467 NYS2d 401 (2d Dept 1983).

N.Y. Ins. Law §5102(d) defines serious injury as an injury resulting in:

    (i) death;

    (ii) dismemberment;

    (iii) significant disfigurement;

    (iv) fracture;

    (v) loss of a fetus;

    (vi) permanent and total loss of use of a body organ, member, function or system;

    (vii) permanent consequential limitation of use of a body organ or member;

    (viii) significant limitation of use of a body function or system;

    (ix) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment.

In this case, Mr. Desir will claim (vii) permanent consequential limitation of use of a body organ or member (See N.Y. Pattern Jury Instr. 2:88E) and (viii) significant limitation of use

of a body function or system (See N.Y. Pattern Jury Instr. 2:88F). Specifically, he suffers from Complex Regional Pain Syndrome (CRPS) in his right ankle, which has permanently and significantly limited his ability to use his right foot and ankle and has disabled him from gainful employment.

Courts in New York have found the chronic pain syndromes like CPRS can be considered a "serious injury" that "significantly limits the use" of a body function or system. *See e.g.*, *Pagels v. P.V.S. Chemicals, Inc.*, 266 A.D.2d 819, 819, 698 N.Y.S.2d 368, 369–70 (1999) (ruling that a plaintiff's "chronic pain syndrome that significantly limits the use of her upper torso " raised a triable issue of fact whether the plaintiff suffered a "permanent consequential limitation of use of a body organ or member; [or a] significant limitation of use of a body function or system."); *see also Thomas-Vasciannie v. State*, 14 Misc. 3d 1228(A), 836 N.Y.S.2d 495 (Ct. Cl. 2006).

The government cites to caselaw in its trial brief stating that "the plaintiff may not recover for those damages that [a] preexisting condition would have caused in the absence of negligence." (*See* Def. Trial Brief at 2, citing *Oakes v. Patel,* 20 N.Y. 3d 633, 647 (N.Y. 2013).

Mr. Desir disputes that he had any pre-existing condition that was aggravated by the August 2014 vehicle collision.

Furthermore, an accident need not be the exclusive cause, but only a competent producing cause. *Bobbe v Camato*, 26 AD2d 627, 272 NYS2d 475 (2d Dept 1966). An accident that produces injury by precipitating the development of a latent condition or by aggravating a pre-existing condition, is a cause of that injury. *Tobin v Steisel*, 64 NY2d 254, 485 NYS2d 730, 475 NE2d 101 (1985). *See* N.Y. Pattern Jury Instr. 2:282: "If you find that before this (accident, occurrence) the plaintiff had a [*specify the particular condition*] and further find that because of

the (accident, occurrence) this condition was aggravated so as to cause (increased) suffering and disability, then the plaintiff is entitled to recover for any (increased) disability or pain resulting from such aggravation. . . ."

### B. Economic Damages

As stated above, Mr. Desir agrees that New York law governs, as a threshold matter, whether he can recover for economic loss greater than $50,000.

A plaintiff is entitled to recover for his reasonable expenditures for medicines and medical services, and for any other reasonable and necessary expenses incurred as a result of the accident involved in this case, including those likely to be incurred in the future. *See* N.Y. Pattern Jury Instr. 2:285.

A plaintiff is entitled to be reimbursed for any earnings lost as a result of his injuries caused by a defendant's negligence from the time of the accident to the present. If, as a result of those injuries, a plaintiff has suffered a reduction in his capacity to earn money in the future, then he is also entitled to be reimbursed for loss of future earnings. *See* N.Y. Pattern Jury Instr. 2:290.

The government cites *Ray Gaul and Commercial Union Ins. Co.*, 268 A.D.2d 816 (3rd Dept. 2000) for the proposition that, under N.Y. Insurance Law §5102(a)(1), "When medical treatment is not improving or otherwise benefitting the patient, it may no longer be medically necessary." (Def. Tr. Brief at 2). However, this is not what *Gaul* says. In that case, the Supreme Court, Appellate Division (New York's intermediate appellate court) found that an arbitrator had not been "arbitrary and capricious" in agreeing with an independent medical examiner that the plaintiff had reached maximum medical improvement and was no longer benefitting from chiropractic care (contrary to what the plaintiff was claiming). *Id.* at 818.

Furthermore, all Plaintiff's future life care plan expenses will be supported by medical testimony that the proposed treatment is reasonable and necessary.

### C. New York's Collateral Source Rule

New York Civil Practice Laws and Rules §4545 states:

> In any action brought to recover damages for personal injury, injury to property or wrongful death, where the plaintiff seeks to recover for the cost of medical care, dental care, custodial care or rehabilitation services, loss of earnings or other economic loss, evidence shall be admissible for consideration by the court to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source, except for life insurance and those payments as to which there is a statutory right of reimbursement.
>
> If the court finds that any such cost or expense was or will, with reasonable certainty, be replaced or indemnified from any such collateral source, it shall reduce the amount of the award by such finding, minus an amount equal to the premiums paid by the plaintiff for such benefits for the two-year period immediately preceding the accrual of such action and minus an amount equal to the projected future cost to the plaintiff of maintaining such benefits. In order to find that any future cost or expense will, with reasonable certainty, be replaced or indemnified by the collateral source, the court must find that the plaintiff is legally entitled to the continued receipt of such collateral source, pursuant to a contract or otherwise enforceable agreement, subject only to the continued payment of a premium and such other financial obligations as may be required by such agreement.
>
> Any collateral source deduction required by this subdivision shall be made by the trial court after the rendering of the jury's verdict. The plaintiff may prove his or her losses and expenses at the trial irrespective of whether such sums will later have to be deducted from the plaintiff's recovery.

Under this law, the finder of fact must decide the amount of economic damages without consideration of any collateral sources. Only after such verdict does the court make findings that would result in a reduction of those damages for an eventual final judgment. In this case, Mr. Desir will be claiming past medical bills from 25 different healthcare providers, as well as claiming the costs of future medical care. Since the Court will need to determine whether New York's collateral source law applies to these various

5

bills (and to what extent), Mr. Desir would like to brief this issue fully after the close of evidence or after the Court renders a verdict.

### D. Medicare

Under the Medicare Secondary Payer Act, the Administrator of the Centers for Medicare & Medicaid Services ("CMS") has a statutory right of recovery of conditional payments made by Medicare, meaning that Medicare is not a "collateral source" under CPLR 4545. *See* 42 U.S.C. § 1395y(b)(2). Medicare is also considered a secondary payer for future damages and will not pay for medical care for injuries where there has been compensation against a tortfeasor from a settlement or judgment. *See* 42 U.S.C. § 1395y(b)(2)(A)(ii). Therefore, Mr. Desir's future medical care will not "with reasonable certainty, be replaced or indemnified from any such collateral source."

### E. Federal Income Taxes

The government cites *Battistia v. United States*, 889 F. Supp. 716, 725 n.7 (S.D.N.Y 1995), which stated in a footnote, "Plaintiff's lost wages claim must be reduced by the amount of federal income taxes he would expect to pay because to provide a gross award of lost income would be contrary to the compensatory nature of the FTCA and would constitute punitive damages, and state law rules concerning taxes are thus irrelevant."

However, in *Estevez v. United States*, 72 F. Supp. 2d 205, 209–10 (S.D.N.Y. 1999), the same court found that under New York law, damages are not reduced by taxes, even in FTCA cases, and explicitly found *Battista* to be unpersuasive on this point, ruling:

> The Federal Tort Claims Act, however, provides that
>
>> The United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

Thus, damages are assessed against the United States according to the law of the state where the tortious activity took place. New York law is clear that taxes are not deducted from an award of lost earnings, but rather that the gross amount of lost wages is to be awarded. *See Johnson v. Manhattan & Bronx Surface Transit Operating Authority,* 71 N.Y.2d 198, 524 N.Y.S.2d 415, 419, 519 N.E.2d 326 (1988) ("without express statutory direction to the contrary, the damages component of a plaintiff's award as to lost wages ... should be based on gross projected earnings and no deduction or consideration of after-tax net should be allowed into evidence or charged to the jury"); *McKee v. Colt Electronics Co., Inc.,* 849 F.2d 46, 49 (2d Cir.1988) ("it is now abundantly clear that under New York law the calculation of plaintiff's damages must be made as if taxes did not exist").

The law in this Circuit is not to the contrary. In *O'Connor v. United States,* 269 F.2d 578 (2d Cir.1959), the Court of Appeals held that taxes should be considered when computing lost earning in a case of wrongful death under the FTCA. One year later, however, the Court limited this holding, clarifying that the Court in *O'Connor* had based its decision on the Oklahoma law of damages. *McWeeney v. New York, New Haven and Hartford Railroad Co.,* 282 F.2d 34, 39 (2d Cir.1960).[1] The instant case, of course, is governed by New York law, which, as stated above, adheres to a different rule than Oklahoma.

I note that a substantial number of courts have held that it is appropriate to deduct taxes from earnings awarded under the FTCA. *See, e.g., Shaw v. United States,* 741 F.2d 1202 (9th Cir.1984); *Flannery v. United States,* 718 F.2d 108 (4th Cir.1983); *Harden v. United States,* 688 F.2d 1025 (5th Cir.1982); *Battista v. United States,* 889 F.Supp. 716 (S.D.N.Y.1995). I do not, however, find these cases persuasive. Each of them is based on the FTCA's prohibition on assessing punitive damages against the Government. Thus, they reason that because a plaintiff would have been required to pay taxes on the income he would have received in the absence of the Government's negligence, failing to account for taxes in a damage award is equivalent to assessing noncompensatory, and thus punitive, damages against it. With the Supreme Court's holding in *Molzof v. United States,* 502 U.S. 301, 112 S.Ct. 711, 116 L.Ed.2d 731 (1992), however, this reasoning is no longer convincing. In *Molzof,* the Court held that the only "punitive damages" barred by the FTCA are those "legally considered 'punitive damages' under traditional common-law principles," namely damages based on plaintiff's intentional misconduct. *Id.* at 312, 112 S.Ct. 711. I agree with those courts that have held that the failure to deduct taxes does not amount to "punitive damages," as the Supreme Court has now defined it. *See, e.g., Palmer v. United States,* 146 F.3d 361, 367 (6th Cir.1998); *Manko v. United States,* 830 F.2d 831, 837 (8th Cir.1987); *Ferrarelli v. United States,* 90 Civ. 4478, 1992 WL 893461, at *9–11 (E.D.N.Y. September 24, 1992).

Thus, the government is not entitled to the deduction of taxes from any lost earnings compensation in this case.

**F.      Reversionary Trust**

In FTCA cases, courts have exercised discretion in awarding future damages under New York C.P.L.R. 5041 (Article 50-b), which creates a "structured judgment," whereby future damages beyond a certain figure are not paid out in one lump sum, but rather in structured installments over a period of years. *See Estevez v. United States*, 72 F. Supp. 2d 205, 219 (S.D.N.Y. 1999)

Under Article 51-B, the net result of this determination is the entry of a final judgment, from which the plaintiff is entitled to receive a single lump sum payment consisting of the past damages portion of the award plus the first $250,000 of future damages. The defendant is then obligated to buy a structured annuity to fund the remaining portion of the future damages (reduced to present value), which is then divided by the number of years of the plaintiff's remaining life expectancy, plus the 4% statutory annual interest. *See Estevez*, 72 F. Supp. 2d at 220.

As plaintiff reads the government's argument, it wants to have its cake and eat it too. The government contends that Article 51-B's "structured judgment" does not apply, since "the United States has only waived its sovereign immunity for a lump sum damages award." Yet it then proposes that the Court put any future damages into a reversionary trust that would send money back to the government if Mr. Desir dies prematurely. The government offers no details of who would be the trustee, how the trustee would be paid, under what terms Mr. Desir would be allowed to use the trust funds, how the court should adjust any verdict for the New York post-verdict 4% interest entitlement, and other vital features.

8

Given the importance of a foreign jurisdiction's (New York) damages law in making these determinations, and given that, at trial, the parties will dispute both causation and the amount of damages (before even getting to post-verdict reductions), Mr. Desir requests that the Court allow full briefing on these issues after it renders a verdict.

Respectfully submitted,

/s/ Patrick A. Malone
Patrick A. Malone, # 06752
Daniel C. Scialpi, # 18068
Patrick Malone and Associates, PC
1310 L Street, N.W., Suite 800
Washington, DC 20005
pmalone@patrickmalonelaw.com
(202) 742-1500

Steven E. Goren
30400 Telegraph Road, Suite 470
Bingham Farms, MI 48025-5818
(248) 502-3540
FAX: (248) 469-0780
sgoren@gorenlaw.com

*Attorneys for the Plaintiff*

# **CERTIFICATE OF SERVICE**

I hereby certify that on this 27th day of October 2020, I served a copy of the foregoing Plaintiff's Brief in Response to United States' Trial Brief on Damages *via* the Court's electronic filing system (ECF) on:

>Jane E. Andersen
>Neil R. White
>Assistant United States Attorneys
>6500 Cherrywood Ln., Suite 200
>Greenbelt, MD 20770
>(301) 344-4433
>
>*Attorneys for Defendant*

                                                      /s/ Daniel C. Scialpi