## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

RONY DESIR,

     Plaintiff,

     v.

UNITED STATES OF AMERICA,

     Defendant.

Civil Action No. TDC-17-3465

## MEMORANDUM OPINION

Plaintiff Rony Desir filed this civil action against the United States of America ("the Government") under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680 (2018), based on a motor vehicle accident on August 29, 2014 in New York in which the vehicle he was driving was struck from the rear by a car operated by a United States Secret Service agent. After a seven-day bench trial in November 2020, the Court found in favor of Desir on liability and made a preliminary finding of damages, subject to post-trial briefing. Having reviewed the submitted briefing on damages, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Court will revise the damages award.

## BACKGROUND

After the bench trial, for the reasons stated on the record on November 19, 2020, the Court issued a preliminary finding of the following damages:

    1.    Past Medical Expenses in the amount of $679,043, reduced by collateral source offsets to $62,883;

    2.    Future Medical and Life Care Expenses in the amount of $866,566;

3.      Past Lost Earnings in the amount of $197,516;

4.      Future Lost Earnings in the amount of $403,964;

5.      Past Pain and Suffering in the amount of $400,000; and

6.      Future Pain and Suffering in the amount of $800,000.

The parties have since submitted post-trial briefing on how the damages award should be adjusted. At the outset, the parties agree that incurred medical expenses paid by Medicare and subject to a Medicare lien, which currently total $22,145, should not be offset, and that the amount may increase if Medicare asserts an additional lien. The parties also agree that collateral source offsets should reduce Desir's future lost earnings by $154,482, resulting in an award of $249,482. Throughout the Court's analysis, including in calculating the final damages award amounts, the Court will round values to the nearest whole number.

## DISCUSSION

As remaining disputes, the parties disagree on the amount of damages that should be awarded for past medical expenses. Specifically, they disagree on whether and how much damages should be awarded for (1) treatment by or paid for by Kaiser Permanente ("Kaiser"); (2) treatment by University Place Orthopaedics LLP ("University Place") in New York; (3) treatment reflected in unpaid bills incurred while Desir was a Medicare recipient; and (4) treatment reflected in unpaid bills issued to Desir by various other medical providers. On lost earnings, the parties disagree on the amount that Desir's past lost earnings should be offset by collateral sources and whether the Court should deduct federal income taxes from the award of future lost earnings.

## I.    Legal Standards

The parties agree that New York law applies to this FTCA action. *See* 28 U.S.C. § 1346(b)(1) (stating that under the FTCA, the United States may be "liable to the claimant in

2

accordance with the law of the place where the act or omission occurred"); *Cibula v. United States*, 551 F.3d 316, 319 (4th Cir. 2009) (quoting 28 U.S.C. § 1346(b)(1)).

New York law allows a plaintiff in a motor vehicle personal injury suit to recover damages for medical "expenses incurred." N.Y. Ins. Law § 5102(a)(1) (McKinney 2020); *see also id.* § 5104(a) (providing the cause of action). For the reasons stated on the record during the bench trial session on November 19, 2020, the Court has found that a plaintiff incurs a medical expense when the plaintiff becomes obligated to pay it, regardless of whether the plaintiff or another entity later pays the expense. 11/19/20 Trial Tr. at 24-25, ECF No. 130.

Under New York law, once an adjudicator makes an initial determination of liability and damages in a personal injury suit, the damages award is adjusted based on offsets from collateral sources. *See* N.Y. C.P.L.R. § 4545 (McKinney 2020). When a plaintiff seeks damages for medical care or lost earnings, evidence is admissible "to establish that any such past or future cost or expense was or will, with reasonable certainty, be replaced or indemnified, in whole or in part, from any collateral source, except for life insurance and those payments as to which there is a statutory right of reimbursement." *Id.* For any expense that a court finds "was or will, with reasonable certainty, be replaced or indemnified" by a collateral source, such as insurance, the court "shall reduce the amount of the award by such finding, minus" the cost to the plaintiff of premiums paid or necessary to maintain the insurance or other collateral source. *Id.* The "reasonable certainty" standard is equivalent to a "clear and convincing evidence" standard and requires that it be "highly probable" that a collateral source has or will pay for an expense the plaintiff incurred. *Kihl v. Pfeffer*, 848 N.Y.S.2d 200, 207 (N.Y. App. Div. 2007) (collecting cases).

## II.    Past Medical Expenses

Desir has now clarified that he seeks a total of $258,609 in past medical expenses, consisting of (1) $183,624 for medical expenses relating to Kaiser Permanente; (2) $22,145 for expenses paid by Medicare; (3) $14,348 billed by University Place for treatment by Dr. Steven Sheskier; and (4) $38,493 in other medical expenses for which he still has an outstanding balance.

### A.    Kaiser Permanente

After trial, the Court initially included in its damages calculation $202,033 as the amount of medical expenses charged by Kaiser, Desir's insurer and primary medical care provider during the majority of the relevant events, but concluded that the full amount would be removed from the preliminary damages award because it was offset by a collateral source, namely, Kaiser. The Court reached this conclusion because the submitted records appeared to reflect that Kaiser had paid all of those expenses in full.

Desir seeks that the final damages award include compensation for $183,624 of the Kaiser medical expenses, because Kaiser currently has a lien against him in that amount for expenses it paid for medical care arising from the August 29, 2014 accident, so he continues to be obligated to pay those expenses. Before trial, the parties stipulated that "Kaiser asserts a subrogation claim for past medical expenses in the amount of $183,623.64." Joint Proposed Pretrial Order at 16, ECF No. 101. The Government, however, argues that although Desir incurred the medical expenses, Kaiser's payment of those expenses constitutes an offsetting collateral source, and Kaiser's lien does not render the prior payment of expenses subject to a "statutory right of reimbursement" such that it would not be treated as a collateral source under N.Y. C.P.L.R. § 4545(a). The Government urges, in effect, that although Desir is liable to Kaiser for the lien, he

4

should not receive damages to pay that lien and instead should have to find the money on his own. This assertion is incorrect for two reasons.

First, where the vast majority of the medical care at issue was provided by Kaiser physicians and health care providers, the submitted Kaiser itemized statement report, Exhibit 25, on its face lists only charges for services by Kaiser providers, and no evidence was provided of the total amount of actual payments made by Kaiser to third-party medical providers, it is not at all clear that the Kaiser report showing no current balance proves that Kaiser actually paid these expenses such that it acted as a collateral source. Rather, the records could be fairly construed as an itemization of services for internal accounting purposes which, when combined with the lien, establishes a "future cost or expense" owed by Desir upon receipt of any judgment, absent a collateral source. *See* N.Y. C.P.L.R. § 4545(a). The Government, which has the burden to establish collateral sources, has never established that there was any point at which there was "reasonable certainty" that Kaiser had truly "replaced or indemnified" the medical expenses, because there is no evidence that Kaiser ever conceded that Desir is no longer obligated to pay them. *Id.* As such, the Kaiser itemized statement report and the lien collectively reflect that Desir continues to be obligated to pay the Kaiser medical expenses, such that Kaiser's purported payments do not constitute a collateral source.

Second, even if Kaiser's apparent payment of its own medical providers is properly classified as a collateral source, Kaiser has a "statutory right of reimbursement" such that the damages award should not be offset by the amount of the lien. As noted above, under New York law, past medical expenses are not reduced by payments from a collateral source if that source has "a statutory right of reimbursement." N.Y. C.P.L.R. § 4545(a). Here, it is undisputed that Desir's Kaiser health insurance was provided through his wife, a federal employee, such that it was subject

5

to a contract with the United States Office of Personnel Management ("OPM") pursuant to the Federal Employees Health Benefits Act ("FEHBA"), 5 U.S.C. §§ 8901-8914 (2018). OPM requires that, through a contract with their policyholders, FEHBA insurers such as Kaiser must maintain a right of subrogation or reimbursement and provide benefits "on the condition" that the insurer "may pursue and receive subrogation and reimbursement recoveries pursuant to the contract." 5 C.F.R. § 890.106(b)(2) (2020). This requirement is imposed for good reason: FEHBA insurer recoveries "translate to premium cost savings for the federal government and FEHB enrollees." Federal Employees Health Benefits Program; Subrogation and Reimbursement Recovery, 80 Fed. Reg. 29203-01 (May 21, 2015). OPM estimated that in 2014 alone, FEHBA insurers recovered "approximately $126 million" through this system of reimbursement and subrogation. *Id.*

Significantly, the FEHBA provides that these contractual subrogation and reimbursement requirements "supersede and preempt" state laws that would otherwise bar such recovery. 5 U.S.C. § 8902(m)(1); *Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190, 1194 (2017) (upholding the preemption provision of 5 U.S.C. § 8902(m)(1) and holding that it is compatible with the Supremacy Clause of the United States Constitution). In *Nevils*, the United States Supreme Court specifically held that it was the federal statute, the FEHBA, that gave contract terms adopted pursuant to the FEHBA preemptive force, and noted that many federal statutes leave the "context-specific force of the preemption to contractual terms." *Nevils*, 137 S. Ct. at 1198. Where the FEHBA has effectively granted the force of a federal statute to contractual subrogation and reimbursement terms adopted pursuant to the FEHBA, the Court finds that the FEHBA provides a federal statutory right of reimbursement to Kaiser, and that the right applies to Kaiser's lien against Desir. *See Calingo v. Meridian Resource Co., LLC*, No. 11-CV-628(VB), 2013 WL

1250448, at *1, *4 (S.D.N.Y. Feb. 20, 2013) (holding that an insurer of a federal employee and his spouse under the FEHBA, by virtue of a contractual right to reimbursement, had a statutory right of reimbursement under 5 U.S.C. § 8902(m)(1) that preempted a conflicting provision in N.Y. Gen. Oblig. § 5-335). Accordingly, the Kaiser medical expenses are not subject to offset by a collateral source.

A contrary reading, which would preclude plaintiffs like Desir from recovering damages in order to satisfy a lien imposed pursuant to such a subrogation or reimbursement clause, would lead to the perverse result that a plaintiff who succeeds in holding a defendant liable would not be able to recover for medical expenses it remains obligated to pay, and that a FEHBA insurer may be unable to secure reimbursement for its payment of medical expenses even when a financially viable defendant has been found liable, with adverse financial implications for the federal government.

Lastly, the Government also argues that even if Desir may receive damages relating to the Kaiser medical expenses, the amount should be less than $183,624 because "not all of the medical services provided by Kaiser relate to" the injuries for which the Government is liable. Def.'s Opp'n at 7, ECF No. 136. At trial, however, Dr. Paul Christo testified that the Kaiser records reflected medical expenses reasonably related to the August 29, 2014 accident, and the Government has offered no contrary evidence or calculations upon which to base any reduction. Moreover, where Kaiser recorded total treatment expenses of $202,033 but seeks less here, the lien amount fairly reflects the costs of treatment for Desir's injuries stemming from the accident. The Court will therefore award Desir $183,624 in past medical expenses relating to Kaiser.

### B.      Medicare

Desir became a Medicare Part A recipient in October 2017 and a Medicare Part B recipient in October 2018.  The parties have agreed that by law, Medicare payments do not count as an offsetting collateral source, because Medicare has a statutory lien allowing it to recover its payments from the proceeds of the judgment.  *See* 42 U.S.C. § 1395y(b)(2) (2018).  The parties therefore agree that the amount of Medicare's lien, $22,145, should be included in the damages award.  The Court agrees with Desir that if the amount of Medicare's lien increases, the increased amount should be reflected in the damages award as well.

The Government further asserts that, for those medical bills with outstanding balances which Desir seeks to have included in the damages award, if the treatment occurred while Desir was a Medicare recipient, the expenses included in the damages award should be limited to the amount of Medicare's statutory lien, on the grounds that "any remaining balance is not recoverable because there is no obligation" to pay.  Def.'s Opp'n at 5.  The Government acknowledges, however, that while "participating provider[s]" may not seek payment beyond what Medicare directly pays, "non-participating physicians" may seek payment from a patient for the difference between what Medicare pays and the full expense, subject to a statutory limit.  *Id.* at 4-5 (citing 42 U.S.C. §§ 1395w-4(g)(1)(A)(i), (2)(C)).  Even when using a participating provider, a patient may still encounter out-of-pocket costs such as deductibles and copayments.  *See* Medicare.gov, *Lower costs with assignment*, https://www.medicare.gov/your-medicare-costs/part-a-costs/lower-costs-with-assignment (last visited Feb. 24, 2021) (identifying costs that may still occur with participating providers); Fed. R. Evid. 201(b)(2).  A patient also may use an out-of-network provider which opted out of Medicare and can therefore charge the entire cost of treatment to the patient.  *See id.* (explaining "private contracts").

8

Where there are multiple scenarios under which Desir, as a Medicare recipient, could still be responsible for certain Medicare expenses, and he has submitted bills with outstanding balances, it is fair to infer that the medical providers billed in good faith and were not seeking payments from Desir that they were not authorized to seek. He therefore has met his initial burden to show that he incurred these expenses. The Government provided no evidence to show that these bills were improper in that all of these providers were actually obligated to accept only Medicare's payment without billing Desir for any portion of their services. The Government also has not shown that there is a "reasonable certainty" that Desir is no longer required to pay these bills because they are subject to be offset by a collateral source. N.Y. C.P.L.R. § 4545. Thus, the Court will not reject the additional medical bills solely because Desir was a Medicare recipient at the time of the services.

### C.      University Place

In its preliminary damages award, the Court tallied medical expenses charged to Desir by University Place for the treatment by Dr. Steven Sheskier, who conducted Desir's second ankle surgery. Although the Government now objects to including these expenses based on a lack of evidence to show that they were incurred, at trial the Court accepted into evidence Exhibit 46, a University Place financial statement, which lists charges for treatment by Dr. Sheskier and an unpaid balance of $14,476 as of December 2015, which undisputedly related to Desir's ankle injury. Where the Government offered no evidence to show that University Place wrote off the charges or received payment for the charges from a collateral source, Desir has shown by a preponderance of evidence that he was obligated to pay those expenses and thus incurred them. Although Desir has now offered, with his post-trial briefing, documentation that he remains liable to University Place for $14,348, based on a contractual assignment, the Court need not accept the

document to reach this conclusion.  The Court will therefore include Desir's request of $14,348 in University Place expenses in the final damage award.

### D.    Other Medical Expenses

Desir's request for $38,493 in damages reflected in other medical bills for which he has an unpaid balance are based on the charges in Exhibits 26, 27, 28, 29, 30, 33, 34, 35, 36, 37, 38, 40, 42, 43, 44, 45, 47, and 48.  The Government continues to object to including in the damages award certain of these medical expenses on the grounds that  (1) there is no longer an obligation to pay because the statute of limitations has run; and (2) there was a lack of proof of an expense incurred, including in some instances a lack of proof that the treatment was related to Desir's ankle injury.

### 1.    Statute of Limitations

The Government argues that because the statute of limitations has now expired for some or all of these unpaid medical bills, they do not constitute medical expenses "incurred" under New York law.  This argument, however, provides no basis to conclude that Desir did not actually incur the expenses, as he was actually obligated to pay them at the time the treatment occurred.  Under New York law, neither the insurance law nor the collateral source offset law recognizes an expired statute of limitations as a basis to omit from damages an expense otherwise incurred.  *See* N.Y. Ins. Law § 5102(a)(1); N.Y. C.P.L.R.  § 4545.   Indeed, the Government itself cites no legal authority to support its position.  At best, the Government is arguing that because Desir has yet to pay the bills, and the medical providers are now time-barred from bringing a civil action to compel payment, there is the equivalent of a collateral source replacing the expense such that it should be offset in full.  The Government, however, cannot show that the expiration of the statute of limitations, while removing an enforcement mechanism, creates a "reasonable certainty" that the expense has now been "replaced or indemnified."  *See* N.Y. C.P.L.R. § 4545(a).  Where there is

no evidence that these medical providers have actually written off the expenses, the debts remain owed, and the medical providers can continue to seek to collect them from Desir, including by referring them to collection agencies with potential adverse consequences for Desir's credit history, can use them to offset future medical expenses incurred, and can refuse to provide future medical care to Desir absent payment of the past expenses. Because the statute of limitations has no bearing on whether medical expenses were actually incurred and do not establish reasonable certainty that the debts are no longer owed, it does not provide a basis to alter the damages award.

### 2.    Lack of Proof

The Government also argues that Desir did not meet his burden of proof to establish that the medical expenses with unpaid balances were actually incurred because he did not "testify that he actually owes any money reflected on" the exhibits related to those providers. Def.'s Opp'n at 3. In its preliminary ruling, however, the Court concluded that the documentary evidence supported the expenses incurred from all of the medical providers at issue in this category, with the exception of Bay Surgery Centers and Tower Radiology, which are discussed below. The Government's argument provides no basis to revisit that conclusion.

The Government more specifically objects to the expenses listed in Exhibits 26, 29, 30, 40, 44, and 47 on the grounds that Desir "failed to establish that any medical care related to his back is causally related to the motor vehicle accident." *Id.* at 6. It does so even though at trial, the Government stated, in discussing Exhibits 26, 30, 40, 44, and 47, "We do not claim that the services provided aren't related to Mr. Desir's ankle." 11/4/20 Trial Tr. at 45. In fact, the Court already considered this issue and included in its preliminary damages award only those medical expenses it deemed incurred to treat Desir's injuries from the motor vehicle accident, and it already largely excluded the expenses listed in Exhibit 29 (Tower Radiology) and Exhibit 40 (Bay Surgery

Centers). *See infra* part II.D.3. The Court included those other damages the Government now challenges for two reasons.

First, Desir received treatment for his ankle injury from the providers listed in Exhibits 26, 30, and 44. In addition to his general testimony that the medical bills reflected treatment relating to Desir's ankle injury, Dr. Christo also specifically testified about assessments of Desir's ankle by Dr. Eric G. Dawson, whose medical charges are contained in Exhibit 26. Similarly, in Exhibit 30, Andrews Chiropractic Center listed "pain in right ankle and joints of right foot" as one of Desir's symptoms. Ex. 30. As for Exhibit 44, the billing statement from Pro Spine and Pain Medicine PLLC reflecting treatment by Dr. Syed Husain, Desir testified that he received treatment from Dr. Husain in 2016 for pain related to his ankle injury.

Second, Exhibit 47, the bill from Absolute Chiropractic Care, itself reflects that the referenced back treatment was causally connected to the August 29, 2014 motor vehicle accident. The bill contains the notation "Case Description: MVA 08/29/14" and relates to treatment within the first two months after the accident. Ex. 47. The Court will therefore maintain the medical expenses relating to all of these exhibits, with the exception of Exhibits 29 and 40.

### 3.    Final Calculations

Though the Court has declined to accept the Government's broad arguments for rejecting some or all of the expenses in the medical bills with unpaid balances, it does not accept Desir's requests in their entirety. As discussed above, the Court will not include in the damages award Desir's request for $4,594 in medical expenses from Bay Surgery Centers and $5,401 from Tower Radiology. Exhibit 40, the "Billing Summary" for Bay Surgery Centers, lists a total outstanding charge of $4,594.00 in the column for "Insurance 1" and $0.00 in the "Patient" column. Ex. 40. Where the only evidence presented relating to Bay Surgery Centers shows that the charges were

12

paid by insurance and there was no balance owed by Desir, the Court concludes that Desir has not established that he incurred medical expenses from Bay Surgery Centers. Similarly, Exhibit 29, Desir's "Personal Financial History" with Tower Radiology, lists a "Total Balance" of $5,401.17, including an "Insurance Balance" of $5,355.00 and a "Patient Balance" of $46.17. Ex. 29. The document also lists a previous payment of $181.01. Where the evidence shows that insurance paid almost all of the charges from Tower Radiology, and Desir presented no other evidence on the issue, the Court finds that Desir's total expenses incurred from Tower Radiology total $227, the sum of the paid bill and the patient balance, and will award damages in that amount. This lower amount is properly awarded because Dr. Gregory Guyton, an expert witness for the Government, confirmed during his trial testimony that Tower Radiology conducted imaging of Desir's ankle damage.

As for the remaining requested medical expenses, Desir presently requests the same amounts sought at trial in medical expenses incurred from the following providers: $13,089 from Proflex Physical Therapy (Exhibit 27); $1,000 from Manhattan Diagnostic Radiology (Exhibit 28); $5,335 from Andrews Chiropractic Center (Exhibit 30); $238 from MedStar NRH Rehabilitation Network (Exhibit 34); $1,871 from MedStar Physicians Billing Services (Exhibit 35); $1,800 from NAPA Anesthesia Services (Exhibit 36); $171 from KCI Wound Care (Exhibit 37); $1,312 from CVS (Coram) (Exhibit 38); $125 from the University of Maryland Charles Regional Medical Center (Exhibit 42); $1,348 from Washington Open MRI (Exhibit 43); $394 from Pro Spine & Pain Medicine PLLC (Exhibit 44); $1,675 from Absolute Chiropractic Care (Exhibit 47); and $43 from Northshore LIJ Medical Group (Exhibit 48). Presumably as a result of write-offs, he now requests reduced expense amounts of $1,695 for Dr. Eric Dawson (Exhibit 26); $104 for Hanger Clinic (Exhibit 33); and $268 for NYU Hospitals Center (Exhibit 45). Consistent with the Court's

prior conclusions in calculating the preliminary damages award, the Court finds that these expenses were incurred and will include them in the final damages award.

Based on the foregoing analysis, the Court will award damages of $250,812 for past medical expenses, consisting of $183,624 for Kaiser medical expenses; $22,145 for Medicare expenses; $14,348 for University Place expenses; and $30,695 for the remaining expenses.

## III.    Lost Earnings

The parties have two remaining disputes regarding the damages for lost earnings, one relating to past earnings and one relating to future earnings.

### A.    Past Earnings

After trial, the Court's preliminary damages award included $197,516 in past lost earnings, to be reduced by collateral sources. The parties agree that this amount should be offset by the amount of private long-term disability payments, which totaled $104,560; by a 2018 lump sum Social Security disability payment of $42,428; and by monthly Society Security disability payments already received. As for monthly Social Security disability payments, before trial, the parties stipulated that Desir "began to receive $1,236 per month in social security disability in October 2018" and that he "has continued to receive monthly payments with cost of living increases." Joint Proposed Pretrial Order at 16. The parties now agree that Desir received monthly Social Security disability payments of $1,236 over 26 months, totaling $32,136, but they disagree on whether the offset should include additional amounts paid to Desir as cost-of-living adjustments ("COLAs") in 2019 and 2020. The Government argues that the offset for Social Security disability payments should include the 1.6 percent COLA for 2019 and the 1.3 percent COLA for 2020 listed on the Social Security Administration's public website, which would result in an offset of $32,771 for these payments. Social Security Administration, *Cost-Of-Living Adjustments*,

14

https://www.ssa.gov/oact/cola/colaseries.html (last visited Feb. 24, 2021). Desir argues that no such adjustment should be made because the Government failed to present evidence at trial on the specific amount of COLAs paid to Desir.

Here, the fact that Desir's monthly Social Security disability payments included COLAs was in evidence in the form of the stipulation. Where that fact was undisputed, the Court will take judicial notice of the published COLA rates and find that they provide "reasonable certainty" that Desir's lost earnings were replaced, in part, by these additional amounts. *See* Fed. R. Evid. 201(b)(2), 201(d) (stating that the court may take judicial notice "at any stage of the proceeding"). The Court will therefore calculate the appropriate offset for past monthly Social Security disability benefits payments to be $32,771, an amount that includes past COLAs. When this offset and the collateral source offsets to which the parties have already agreed are subtracted from the $197,516 in past lost earnings, the final damages award for past lost earnings will be $17,757.

### B.    Future Earnings

As for future lost earnings, the parties disagree on whether federal income taxes should be deducted from Desir's future lost earnings. Under New York law, taxes are not deducted from a personal injury damages award. *Johnson v. Manhattan & Bronx Surface Transit Operating Authority*, 71 N.Y.2d 198, 206 (1988).

In arguing that federal taxes should nevertheless be deducted, the Government cites *Flannery for Flannery v. United States*, 718 F.2d 108 (4th Cir. 1983), in which the United States Court of Appeals for the Fourth Circuit held that in an FTCA case, even if the applicable state law bars deductions of federal income taxes from a damages award, federal income taxes must nevertheless be deducted from a plaintiff's future lost earnings. *Id.* at 111. In reaching this conclusion, the court first referenced the FTCA's bar on punitive damages, which provides that

15

the Government "shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674; *see Flannery*, 718 F.3d at 110. The Fourth Circuit then reasoned that any award that "gives more than the actual loss suffered by the claimant" constitutes punitive damages prohibited by § 2674, and that a pre-income tax award would therefore be "punitive" because it "gives the plaintiff more than is truly compensatory." *Flannery*, 718 F.2d at 111. The court also concluded that the FTCA punitive damages prohibition also barred a damages award for loss of capacity to enjoy life when a plaintiff is comatose, even though such an award was available under state law, because such a plaintiff receives "no direct benefit" from such an award. *Id.*

Although the reasoning of *Flannery* would apply to the present case, the Supreme Court effectively rejected its analysis in *Molzof v. United States*, 502 U.S. 301 (1992). In *Molzof*, the district court denied FTCA damages for loss of enjoyment of life for a comatose patient, and the United States Court of Appeals for the Seventh Circuit affirmed, explicitly adopting the "Fourth Circuit's view" in *Flannery* that the FTCA prohibits such damages as punitive. *Molzof v. United States*, 911 F.2d 18, 22 (7th Cir. 1990). The Supreme Court reversed, holding that the FTCA "bars the recovery only of what are *legally* considered 'punitive damages' under traditional common-law principles," namely, those that depend on a defendant's "intentional or egregious misconduct" and that are imposed with the purpose "to punish" the defendant for such misconduct. *Molzof*, 502 U.S. at 313. While *Molzof* did not explicitly address the issue of whether federal income taxes must be deducted from an FTCA damages award, its implication is unmistakable: gross future lost earnings, awarded for simple negligence, are not "punitive" within the meaning of § 2674 because they do not depend on the defendant's intentional or egregious conduct. *See id.* Since *Molzof*, several courts have invoked its reasoning in finding that the relevant state law applies to the question of whether federal income taxes should be deducted from an FTCA damages award.

16

*See Kirchgessner v. United States*, 958 F.2d 158, 163 (6th Cir. 1992) (stating that, in light of *Molzof*, an award of gross future lost earnings does not constitute "punitive damages" under the FTCA); *Estevez v. United States*, 72 F. Supp. 2d 205, 210 (S.D.N.Y.1999) (holding that, pursuant to *Molzof*, federal income taxes are not deducted from an FTCA damages award in a case governed by New York law); *see also Dawson v. United States*, No. 1:11CV114, 2013 WL 2945061, at *4 (N.D. W.Va. June 14, 2013) (declining to apply *Flannery* in light of *Molzof*). The Court therefore will not deduct federal income taxes from the award of future lost earnings. Where the parties otherwise agree that the Court's preliminary future lost earnings award should be reduced only by $154,482 in offsets, the final future lost earnings award is $249,482.

## CONCLUSION

For the foregoing reasons, the final damages award shall include the following amounts: (1) Past Medical Expenses: $250,812; (2) Future Medical and Life Care Expenses: $866,566; (3) Past Lost Earnings: $17,757; (4) Future Lost Earnings: $249,482; (5) Past Pain and Suffering: $400,000; and (6) Future Pain and Suffering: $800,000. A separate Order shall issue.

Date: February 26, 2021

THEODORE D. CHUANG
United States District Judge